UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO: _____

PATRICIA FRANZA, as Personal
Representative of the Estate of
PASQUALE F. VAGLIO,

    Plaintiff,
vs.

ROYAL CARIBBEAN CRUISES,
LTD., A LIBERIAN CORPORATION,

    Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiff, PATRICIA FRANZA, as Personal Representative of the Estate of PASQUALE F. VAGLIO, by and through undersigned counsel and sues the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, and alleges as follows:

### GENERAL ALLEGATIONS

1. That this is an action for damages which exceeds Seventy-Five Thousand ($75,000.00) Dollars, and the court has diversity jurisdiction pursuant to *28 USC §1332*.

2. That this court has initial jurisdiction pursuant to *28 USC §1333* and the General Maritime Laws of the United States.

3. That the Plaintiff, PATRICIA FRANZA, is the duly appointed Personal Representative of

WAKS & BARNETT, P.A.
9900 SW 107th Avenue, Suite 101, Miami, FL 33176  Tel: (305) 271-8282  Fax: (305) 595-9776

the Estate of Joseph Vaglio, deceased. Attached hereto and made a part hereof as Exhibit "A" is a copy of the Letters Testamentary issued on July 27, 2012, by the Surrogates Court of Nassau County, NY.

4. That at all times material the Plaintiff, PATRICIA FRANZA, as Personal Representative of the Estate of PASQUALE F. VAGLIO, was and is a resident of the State of New York.

5. That at all times material, the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, hereafter referred to as "RCCL", was and is a foreign corporation with its principal place of business in Miami-Dade County, Florida.

6. That at all times material, RACQUEL Y. GARCIA, R.N., was a nurse employed by the Defendant, RCCL, and was at all times material acting within the scope and course of her employment with RCCL.

7. That at all times material, ROGELIO GONZALES, M.D., was employed by the Defendant, RCCL, as its ship's physician and was at all times material acting within the scope and course of his employment with RCCL.

8. That at all times material, the Defendant, RCCL, was the owner and/or operator of the cruise ship EXPLORER OF THE SEAS.

9. That on or about July 23, 2011, the decedent, PASQUALE VAGLIO, was a passenger on the EXPLORER OF THE SEAS, which was docked in Bermuda.

10. That at said time and place, PASQUALE VAGLIO fell while attempting to get onto a trolley at or near the dock. As a result of the fall, he suffered a severe blow to his head.

11. That following the fall, Mr. Vaglio was taken in a wheelchair to the ship's infirmary, at about

10:00 a.m., where he was evaluated by Nurse Garcia, who told him and his wife, Josephine Vaglio, that he was fine to return to his cabin, that he might have a concussion and that she should continue to observe him. The ship's physician did not evaluate Mr. Vaglio, no diagnostic scans were done nor recommended by either Nurse Garcia or Dr. Gonzalez, nor was any further care or treatment done at that time, despite the knowledge that Mr. Vaglio suffered a severe blow to the head, and had a lump and an abrasion on his head.

12. That relying on the advice of the ship's medical personnel, Mr. and Mrs. Vaglio returned to their cabin at or near 10:45 a.m.

13. That at approximately 12:15 – 12:30 p.m., the decedent's son (Joseph Vaglio) and daughter-in-law (Donna Vaglio) returned to the cabin and noted a deterioration in the decedent's status. Donna called 911 to get medical care for PASQUALE VAGLIO. There was a delay of approximately 20 minutes before someone arrived with a wheelchair to transport Mr. Vaglio to the infirmary.

14. That when Mr. Vaglio arrived at the ship's infirmary, there was an additional delay before he was seen while the ship personnel obtained credit card information.

15. Finally, at about 1:45 p.m., the ship's physician started a Mannitol drip and ordered a transfer to King Edward's Memorial Hospital for further care and treatment.

16. That by the time Mr. Vaglio arrived at King Edward's Memorial Hospital, at approximately 4:22 p.m., his condition had deteriorated to the extent that he was not salvageable.

17. That on July 24, 2011, Mr. Vaglio was airlifted to Winthrop-University Hospital in Mineola, NY, where he remained in the intensive care unit until he passed away on August 1, 2011.

18. That PASQUALE VAGLIO is survived by his widow, Josephine Vaglio, who was dependent upon him for financial support and services until his death.

### COUNT I: NEGLIGENT MEDICAL CARE AND TREATMENT

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through 18 as though fully set forth herein, and further alleges as follows:

19. That the Defendant owed a duty to PASQUALE VAGLIO to provide prompt and appropriate medical care following the severe head injury he suffered in the fall from the trolley.

20. That the Defendant, RCCL, by and through the acts of its employees or agents, was negligent, in one or more of the following ways:

    (a) in failing to properly assess the condition of PASQUALE VAGLIO;

    (b) in allowing a nurse to make the initial assessment;

    (c) in failing to have a doctor assess the patient;

    (d) in failing to timely diagnose and appropriately treat the patient;

    (e) in failing to order appropriate diagnostic scans to further assess the degree of injury;

    (f) in failing to obtain consultations with appropriate specialists;

    (g) in failing to properly monitor the patient;

    (h) in failing to evacuate the patient from the vessel for further care in a timely manner;

    (i) in deviating from the standard of care for patients in Mr. Vaglio's circumstances who had suffered a significant blow to the head.

22. That as a direct and proximate result of the negligence of the Defendant, as described above,

the Plaintiff's condition deteriorated to the point that he fell into a coma and died.

23. That had PASQUALE VAGLIO received the appropriate care and treatment, it is more likely than not that he would have survived.

24. That as a result of the negligence of the Defendant, as heretofore described, the Estate of PASQUALE VAGLIO has become obligated to pay significant medical bills and other expenses.

25. That as a result of the negligence of the Defendants, as heretofore described, Josephine Vaglio, the widow of the decedent, has lost his pension, his social security, medical insurance, and the value of his services and incurred expenses for medical care, funeral services and interment.

WHEREFORE, the Plaintiff, PATRICIA FRANZA, as Personal Representative of the Estate of PASQUALE F. VAGLIO, demands judgment against the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## COUNT II: NEGLIGENCE OF RCCL BASED UPON APPARENT AGENCY

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through 25 as though fully set forth herein, and further alleges as follows:

26. That at all times material, the Defendant, RCCL, held out its medical staff, including its

doctors and nurses, as being its employees who work in the Defendant's "medical centers" on the vessel. That the Defendant, RCCL, promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel. That RCCL held out its staff, including RACQUEL Y. GARCIA, R.N. and ROGELIO GONZALES, M.D., as being direct employees or its actual agents.

27. That the Defendant, RCCL, promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line as part of a marketing tool to induce passengers such as the Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

28. That RCCL manifested to the Plaintiff in this case that its medical staff, including RACQUEL Y. GARCIA, R.N. and ROGELIO GONZALES, M.D., were acting as its employees and/or actual agents in various ways, including but not limited to the following:

    (a) the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

    (b) that the "medical centers" are owned and operated by RCCL, which pays to stock the "medical centers" with all supplies, various medicines and equipment; (c) that the passenger is billed directly by RCCL through the passengers' Sign and Sail Card, whereas the "medical staff", including the doctor and nurse, are paid salaries by RCCL to work in the "medical centers".

29. That the medical staff in this case, including RACQUEL Y. GARCIA, R.N. and ROGELIO GONZALES, M.D., were given uniforms to wear which include name tags, and which have

the RCCL name and logo. Said uniforms were required by RCCL to be worn by the doctor and nurse.

30. That the doctor is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

31. That both the ship's doctor and the nurse were held out to the passengers by RCCL as being members of the ship's crew.

32. That the Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

33. That the cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

34. That both the ship's doctor and nurse are permitted to eat with the ship's crew.

35. That the ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff was required to go to the ship's medical center to be seen for his injuries.

36. That at the time of Plaintiff's injury, the Plaintiff was seen and briefly examined by the ship's nurse and/or physician.

37. That based on the foregoing, the Plaintiff believed, and was reasonable in his belief, that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

38. That the Plaintiff relied to his detriment on his belief that the physician and nurse were direct employees or actual agents of the Defendant in that the Plaintiff followed the advice of the nurse and/or physician who did not seek any further medical testing or evaluation while the

ship was in Bermuda, that he relied on the ship's nurse and/or physician, that he did not follow-up with the ship's medical staff as he was told that he did not have any serious injury.

39. That as a result of the Plaintiff's reliance upon the ship's medical staff, the Plaintiff's status was not properly diagnosed and his condition deteriorated to the point that he passed away.

40. That the Defendants are liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, the Plaintiff, PATRICIA FRANZA, as Personal Representative of the Estate of PASQUALE F. VAGLIO, demands judgment against the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

### COUNT III: NEGLIGENT HIRING, RETENTION AND TRAINING BY RCCL

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through 25 as though fully set forth herein, and further alleges as follows:

41. That it is foreseeable to the Defendant, RCCL, that passengers like the Plaintiff would have slip and fall accidents, or other accidents on the cruise which would result in similar injuries.

42. That it is foreseeable that such injuries would occur and require proper examination and evaluation, including appropriate triage in the event that the injury would require shore side examination, diagnostic testing, evaluation, and treatment.

43. That at all times material, the Defendant, RCCL, owed a duty to use reasonable care in hiring and/or retention of all medical personnel, including the ship's doctor and nurse. The

Defendant had a duty to hire medical personnel who were adequately qualified, trained and experienced to work aboard ships and to conduct examinations and evaluations head injuries which would require treatment aboard ships or which might require further evaluations and/or treatments by shore side facilities and/or shore side physicians.

44. That even though the Plaintiff complained of a severe blow to the head, had a lump and an abrasion on his head, the ship's doctor failed and/or refused to see or examine the Plaintiff. That the doctor and the nurse failed to do any detailed examination or evaluation of Plaintiff and failed to advise the Plaintiff that he had a potentially serious injury which required tests and treatment that were unavailable on the ship, including the possibility of surgery. That at the time of Plaintiff's injury, the vessel was still in the Port of Bermuda and the Plaintiff could have easily been referred ashore for further examination, evaluation and treatment.

45. That the Defendant, RCCL, breached its duty of care with regard to hiring and/or retention of the ship's doctor and nurse in one or more of the following manner:

  (a) that the Defendant negligently failed to conduct an appropriate investigation into the backgrounds of the doctor and nurse to determine if they were qualified to practice emergency medicine and to handle examinations and evaluations of severe head injuries;

  (b) that the Defendant negligently failed to hire medical personnel, including the doctor and nurse, that had appropriate training and/or experience in emergency medicine, including evaluation of severe head injuries;

  (c) that the Defendant negligently failed to hire medical personnel which were qualified

and/or sufficiently trained and experienced in the use of diagnostic equipment that was aboard the vessel, which could have been used for diagnostic testing and evaluation of Plaintiff's injuries;

(d) that the Defendant negligently failed to provide appropriate training and procedures to the doctor and nurse for use of the ship's equipment for diagnostic testing;

(e) that the Defendant negligently retained the doctor and nurse without providing appropriate training and procedures for triage and referral to shore side facilities or physician.

46. That as a direct and proximate result of the negligence of the Defendant, the Plaintiff did not receive competent medical care, as a result of which his condition deteriorated and he passed away.

WHEREFORE, the Plaintiff, PATRICIA FRANZA, as Personal Representative of the Estate of PASQUALE F. VAGLIO, demands judgment against the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

Dated January 10, 2013.

By: /s/ *Joel M. Barnett, Esq.*
JOEL M. BARNETT, ESQ.
Florida Bar No.: 248428