UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 13-cv-20090-LENARD/O'Sullivan

PATRICIA FRANZA, as Personal
Representative of the Estate of
PASQUALE F. VAGLIO,

             Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian corporation,

             Defendant.

_____/

### PLAINTIFF'S RESPONSE TO ROYAL CARIBBEAN CRUISES, LTD.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STRIKE PLAINTIFF'S DEMAND FOR TRIAL BY JURY [DE 7]

      Plaintiff, PATRICIA FRANZA, as Personal Representative of the Estate of PASQUALE F. VAGLIO, hereby responds to Defendant, ROYAL CARIBBEAN CRUISES, LTD.'s Motion to Dismiss Plaintiff's Complaint and to Strike Plaintiff's Demand for Trial by Jury.

### Background

      The Plaintiff's Decedent Pasquale F. Vaglio, and his wife, Patricia Franza, were passengers aboard the RCCL vessel "Explorer of the Seas" on July 23, 2011. [DE 1 ¶9].  The vessel was docked at Bermuda on that date.  When Mr. Vaglio was leaving the vessel, and getting onto a trolley near the dock, he fell and sustained a severe blow to his head. [DE 1 ¶10].  He was taken via wheelchair to the ship's infirmary where he was evaluated by RCCL employee nurse Garcia, who informed him and his wife that he was fine to return to his cabin, but he might have a concussion and that his wife should observe him. [DE 1 ¶11].  Mr. Vaglio was not seen by the ship's physician at that time. [Id.].

Relying upon this advice, Mr. and Mrs. Vaglio returned to their cabin at around 10:45 a.m. [DE 1¶12].  Shortly after noon, the Decedent's son and daughter-in-law returned to the cabin and noted a deterioration in the Decedent's status. [DE 1 ¶13].  Donna Vaglio called 911 to get immediate medical attention for her father-in-law, there was a delay of approximately 20 minutes before anyone arrived with a wheelchair to transport Mr. Vaglio to the infirmary. [DE 1 ¶13].  After he arrived at the infirmary there were additional delays before he was seen, while the ship personnel obtained credit card information. [DE 1 ¶14].  Then, at approximately 1:45 p.m. the ship's physician began a mannitol drip in order to transfer ashore to King Edward Memorial Hospital. [DE 1 ¶15]. However, by the time Mr. Vaglio arrived at King Edward Memorial Hospital at approximately 4:22 p.m., his condition had deteriorated to the extent that he was not salvageable.  [DE 1 ¶16].

On the following day Mr. Vaglio was air lifted to Winthrop University Hospital in Mineola, New York, where he remained in intensive care until he passed away a week later on August 1, 2011. [DE 1 ¶17].

### The Complaint

Patricia Franza, Mr. Vaglio's widow, and personal representative of his estate, instituted an action against Royal Caribbean Cruises, Ltd. arising out of the facts noted above.  The Complaint contains three Counts.  The first Count asserts "Negligent Medical Care and Treatment" on the part of RCCL, its nurses, and physicians.  Count II of the Complaint asserts "Negligence of RCCL Based Upon Apparent Agency" for the actions of its medical staff.  Count III entitled "Negligent Hiring, Retention and Training by RCCL" asserts liability against RCCL for negligently hiring, retaining and/or training its medical staff.

### Legal Standard

All that is necessary to survive a motion to dismiss is for a complaint to "contain sufficient

factual matter, accepted as true, to 'state a claim to relief as plausible on its face'." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Satl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This pleading standard does not require detailed factual allegations, although it demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly,* 550 U.S. at 555). To meet this "plausibility standard," a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* at 1949. *Chaparro v. Carnival Corp.,* 693 F.3D 1333 (11th Cir. 2012). Tragically for Pasquale Vaglio, the allegations in the Amended Complaint clearly meet and surpass the *Iqbal* plausibility standard.

### "Applicable Law" Standard

Under maritime law, "the owner of a ship in navigable waters owes to all who are onboard ... the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628 (1959); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F. 2d 1332 (11th Cir. 1984). The benchmark against which a shipowner's behavior must be measured is ordinary care under the circumstances. *Everett v. Carnival Cruise Lines,* 912 F. 2d 1355, 1358 (11th Cir. 1990).

With maritime torts, as with land based torts, in order to state a cause of action for negligence the plaintiffs must allege (1) that defendant owed plaintiff a duty requiring the defendant to conform to a certain standard of conduct; (2) that the defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injuries; and (4) that plaintiff suffered damages. *Chaparro v. Carnival Corp., supra.* Each of these elements is properly pled in our Complaint.

Because the duty owed to a passenger is that of reasonable care under the circumstances, a finding of negligence in a passenger personal injury action is determined on a case by case basis.

*Harnesk v. Carnival Cruise Lines, Inc.,* 1991 W. L. 3298584 (S.D. Fla. 1991).  Accordingly, "the extent to which circumstances surrounding maritime travel are different than those encountered in daily life and involve more danger to passengers, will determine how high a degree is reasonable in each case."  *Keefe v. Bahamas Cruise Lines, Inc.,* 867 F. 2d 1318, 1322 (11th Cir. 1989) (quoting *Rainey v. Paquet Cruises, Inc.,* 709 F. 2d 169, 172 (2d Cir. 1983)).

In determining whether a duty exists, a court must balance the probability of an occurrence causing injury to others, the potential extent of the injury, and the expense and effort of adequate precautions to avoid the occurrence.  *Burklow and Associates, Inc. v. Belcher,* 719 So. 2d 31, 35 (Fla. 1st DCA 1998) (discussing *Kermarec* duty).

## MEMORANDUM OF LAW

### Count I - Medical Negligence, Actual Agency - Request for Fed.R.Civ.P. 54(b) Certification

In a recent decision, Judge Altonaga discussed the traditional majority rule, which holds that cruise lines and other ship owners cannot be held liable for the medical negligence of their ships' physicians, and the emerging minority rule which holds that the majority rule is outdated.  *See Lobegeiger v. Celebrity Cruises, Inc.,* 2011 WL 3703329 (S.D. Fla. 2011).  Judge Altonaga began her analysis by noting that "the Eleventh Circuit has not addressed whether a cruise line can be held liable for the negligence of a shipboard doctor."  *Id*. at *8.

The majority rule, analyzed and discussed in *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364 (5th Cir. 1988) is premised upon two justifications.  The first justification is that the cruise line lacks control over the physician/patient relationship.  The second justification is that the cruise line has limited knowledge of medicine.  *Id*. at *9.

Meanwhile, the minority rule, first espoused in *Nietes v. American President Lines, Ltd.*, 188

F.Supp. 219 (N.D. Cal. 1959) acknowledges that the modern ship's physician is a salaried member of the crew subject to the ship's discipline and supervision of the company's land-side medical personnel through modern means of communication.

We note that this Court has recently aligned itself with the majority rule. *See Farrell v. Royal Caribbean Cruises, Ltd.,* 2013 WL 178242 (S.D. Fla. January 2, 2013).  We will nevertheless argue herein that this Court should, upon further reflection, align itself with the minority line of cases.  In either event, we ask that if the Court dismisses the Actual Agency Count with prejudice, that it certify the question for immediate appeal pursuant Fed.R.Civ.P. 54(b).  We will address that request in more detail, *infra*.

In a recent Law Review article, the author explained that *Barbetta* is an anachronism, if it ever was good policy or good law.  *Has Time Passed Barbetta By?,* Robert D. Peltz, 24 U.S. F. Mar. L. J. 1 (Spring 2012) ("Peltz").  In his article, Peltz lays bare the fallacy of the *Barbetta* holding, particularly in light of recent technological advances and, more importantly, a recent Congressional enactment.

As Peltz points out, Congress recently enacted the Cruise Vessel Security and Safety Act ("CVSSA") to "ensure the security and safety of passengers and crew on cruise vessels."  46 U.S.C.A. §§3507, 3508 (West Supp. 2011).  The CVSSA mandates that cruise ship's carry "medical staff" to provide "medical treatment" to sexual assault victims.  The statute requires the cruise line to provide a medical staff including a physician or registered nurse with at least three years of post-graduate or post-registration clinical practice in general and emergency medicine or who holds board certification in emergency medicine, family practice medicine, or internal medicine.  46 U.S.C.A. §3507(d)(3).  "While section 3(A) of the Act implies that the vessel owner and operator may meet their responsibilities by providing either a licensed physician or registered nurse, the subsequent

sections clearly require a physician." Peltz, 24 U.S.F. Mar. L. J. at 4-5. Accordingly, it can no longer be argued – if it ever credibly could be – that a physician is carried aboard a cruise ship solely as a convenience to its passengers. To the contrary, physicians are now required as a matter of U.S. statutory law. *Id.*

Furthermore, RCCL's vessels are flagged in the Bahamas, and Section 124 of the Bahamian Merchant Shipping Act of 1976 provides in pertinent part:

> (1) Every Bahamian foreign going ship which proceeds from a port having one persons or more on board shall carry on board as a part of her compliment a duly qualified medical practitioner; ...

> (2) For the purpose of subsection (1) of this section a duly qualified medical practitioner means a medical practitioner authorized by law to practice as a legally qualified medical practitioner in any country of the Commonwealth or in any country outside the Commonwealth approved by the Minister.

In addition, technological advances in the practice of medicine and in communications in general have severely undercut the basis of the *Barbetta* decision which observed that "it is pure sophistry to assert that ... some shore-based 'company chief surgeon,' by his very existence is capable of supervising or controlling the actions of a ship's physician." *Barbetta*, 848 F.2d at 1371 (quoting *Amdur v. Zim Israel Navigation Co.*, 310 F.Supp. 1033, 1042 (S.D. N.Y. 1969)). Clearly, what was initially described as "sophistry" nearly a half century ago, is no longer such. Indeed, Peltz noted that Dr. Grant Tarling, Director of Princess Cruise Lines Medical Department and the incoming Chairman of the American College of Emergency Physicians ("ACEP") Cruise Ship Medicine section has stated:

> Cruise ship new-builds have continued to innovate over the last fifteen years and the major cruise lines have designed modern medical facilities comprising several ICUs, computerized radiology, and sophisticated laboratories. As a consequence, medical staffing experience and quality has also improved. Some cruise lines' medical

departments have achieved accreditation to international healthcare standards and ISO9001 certification.

Letter from the Editor (American College of Emergency Physicians Cruise Ship and Maritime Medicine Section Newsletter), July 2011. Peltz goes on to note that in announcing Princess Cruises' receipt of ISO 9001 certification for its medical facilities, Dr. Tarling observed "I think many people would be surprised and reassured to know that our medical centers achieve similar quality standards to medical facilities ashore." Press Release, Princess Cruises, *Princess Cruises' Medical Departments Earn Unique Distinction With Prestigious Quality Certification and Accreditation* (May 6, 2010), http://www.princess.com/news/article.jsp?newsArticleId=na1098.

Furthermore, subsequent to *Barbetta*, now 25 years old, cruise lines have developed the ability to communicate instantaneously with their shore-based medical directors and consultants via email and video conferencing. As Peltz notes, "today, most of the major cruise lines have sophisticated land-based medical departments, staffed by physicians with extensive emergency medicine and shipboard backgrounds." Peltz at 20. Likewise, advances in tele-medicine have been adopted by the cruise industry. Id. at 23.

The Defendant herein, RCCL instituted a tele-dermatology program in 2010 in conjunction with the University of Miami Miller School of Medicine, and has taken advantage of major advancements in the field of x-ray technology by completing the installation of digital x-ray equipment on its ships. Peltz at 25-26. "This new technology enables x-ray images to be transmitted via a secured internet connection instantly to onshore experts for further consultation." Royal Caribbean Cruise Ltd., 2010 Stewardship Report 3, at page 81 (2010) available at http://viewer.zmags.com/publication/49a26be2#/49a26be2/1.

Each of these advances strikes a felling blow to *Barbetta*. In *Lobegeiger*, the court did not

address the continued viability of *Barbetta* because the plaintiff had not premised her theory of recovery on actual agency.  *Id.* at *9 n.8.  Here, by contrast, Mrs. Franza, as the personal representative, has framed Count I as cause of action asserting vicarious liability of the cruise line for the actions or inactions of its physicians and nurses on a theory of actual agency.  Under these circumstances, we believe that it is appropriate to revisit the origins of the *Barbetta* rule, the competing *Nietes* rule, as well as the Florida Supreme Court's more recent decision in *Carnival Corp. v. Carlisle,* 953 So.2d 401 (Fla. 2007).  *Carlisle* acknowledged that *Barbetta* rests upon anachronistic fictions.  Nevertheless, *Carlisle* sacrificed good public policy on the altar of maritime law uniformity, itself a somewhat mythical concept.  *See, e.g., The Myth of Uniformity in Maritime Law,* 21 Tul.Mar.L.J. 103 (1996).

    Although the Eleventh Circuit has not addressed *Barbetta*, the only member of the Court of Appeal to address these issues, was openly critical of the *Barbetta* rule.  *See Fairley v. Royal Cruise Line, Ltd.,* 1993 AMC 1633 (S.D. Fla. 1993) (U.S. District Court Judge Stanley Marcus).  After acknowledging that the "overwhelming tide of caselaw" holds that a shipowner may not be held vicariously liable for the torts of the ship's doctor, Judge Marcus marshaled the significant criticism of that rule, *citing* Beth Ann Erlic Herschaft, Comment*, Cruise Ship Medical Malpractice Cases: Must Admiralty Courts Steer by the Star of Stare Decisis?*  17 Nova L. Rev. 574, 584 (1992) (discussing the incongruity of holding the carrier vicariously liable under the Jones Act where the patient is a *seaman*, but insulating the carrier where the patient is a passenger).  Judge Marcus also noted that one of the leading treatises on maritime law, 1 N. Norris, The Law of Maritime Personal Injuries, 3:10 at 75, acknowledged that the ship's doctor is not an independent contractor, but "in fact, a paid employee of the shipowner...subject to ship's discipline under the general maritime law... ."  *Fairley*, 1993 AMC at 1635 n.2.

Turning to *Barbetta*, Judge Marcus observed that the rule against vicarious liability of a shipowner has been justified on two grounds: (1) a shipping company is not in the business to provide medical services to passengers; and (2) that it is the patient, and not the shipowner, who actually controls the physician.  *Id.* at 1636.

Next, Judge Marcus traced the more modern line of authority, beginning with *Nietes v. American President Lines, Ltd.*, 188 F.Supp.219 (N.D. Cal. 1959) in which the court noted that:

> It is our opinion that, where a ship's physician is in the regular employment of a ship, as a salaried member of the crew, subject to the ship's discipline and the master's orders, and presumably also under the general direction and supervision of the company's chief surgeon through modern means of communication, he is, for the purposes of *respondeat superior* at least, in the nature of an employee or servant for his negligent treatment of a passenger a shipowner may be held liable.

*Nietes,* 188 F.Supp. at 220.

In response to the old bromide that a cruise ship is not a "floating hospital," Judge Marcus observed, instead, that it is more like a "floating hotel," with the exception that the passengers on a floating hotel "are in a radically different situation from the guests in a hotel ashore: they are a captive audience;  the passengers are not "free to contract with [the physician] for any medical services they may require."  1993 AMC at 1638.

Next, Judge Marcus laid bare the canard, still evident in cruise line passenger tickets such as the one issued to the Plaintiff's Decedent herein, that the ship's physician is merely "carried onboard a ship for the convenience of passengers."  *Id*. at 639.  Judge Marcus noted that the alternative to carrying a physician onboard, is that the shipowner must discharge its duty to a sick passenger by putting into port or summoning air rescue.  Accordingly, "the carrier avoids many of these costs and inconveniences by the economic expedience of carrying the ship doctor.  The carrier

benefits once again by advertising the availability of the ship doctor, since the presence of a qualified physician onboard, with a well equipped and well staffed infirmary is an enticement to purchase the ticket." *Id*. Here, the cruise line went a step further, advertising the presence of two quality physicians onboard, although the cruise line engaged in a bait and switch on that promise by providing only one physician.

Eleven years later, the Third District Court of Appeal had the occasion, for the first time, to address the *Barbetta/Nietes* competing lines of authority. *Carlisle v. Carnival Corp.,* 864 So.2d 1 (Fla. 3d DCA 2004), *rev'd*, *Carnival Corp. v. Carlisle,* 953 So.2d 401(Fla. 2007). Much like Judge Marcus, the Third District Court of Appeal traced the history of the *Barbetta* line of cases, and agreed with the plaintiff that those cases "are based upon flawed and outmoded assumptions regarding cruiseship industry and the provision of medical services to passengers... ." *Id*. at 3. The Third District, "like many of the commentators, [found] *Nietes* to be the most persuasive precedent." *Id*. at 5. The Third District got to the nub of the *Barbetta* decision:

> While *Barbetta* criticized *Nietes* as unrealistically presuming away the problem by assuming a ship's doctor was under sufficient control via modern communication with a company's chief surgeon, the *Barbetta* line of cases rests on even shakier fictions. *Barbetta*'s findings that the cruise line should not be held responsible is premised on the unrealistic suggestion that an ailing cruise passenger at sea has some meaningful opportunity to simply forego treatment by the ship's doctor and demand that the captain fulfill his duty of care in some other fashion. ...

*Id*. at 5.

As the Third District noted, the likelihood of demanding that the captain fulfill the duty of reasonable care in some other way "was no more realistic in 1891 than it is today." *Id*. at 5. Picking up where Judge Marcus had left off, the court also noted that:

> The fallacy of the notion that the acutely ill passenger at sea had

> sifted through a series of options and ultimately chosen to use the
> ship's doctor underscores the fiction of the familiar incantation that
> the physician is onboard merely for the "convenience of the
> passenger." In reality, as has been recognized, the ends of the
> cruiseline are, at the very least, equally served by being able to fulfill
> its duty to ill or injured passengers without necessarily being required
> to disrupt the voyage or incur great expense to evacuate the patient
> every time a medical situation arises.

*Id*. at 6. The court concluded that "the practical realities of the competitive cruise industry, and the

reason we anticipate the risk of taking a small city of people to sea for days at a time, all but dictate

a doctor's presence." *Id.* Furthermore, just as Judge Marcus had done in *Fairley*, the court rejected

the notion that the exculpatory language contained in the passenger ticket could pass muster under

46 U.S.C. Section 30509 (formerly Section 183c). Finally, the court noted that "as a result of our

ruling it is unnecessary to address the issues raised with regard to apparent agency." *Id*. n.5.

### Rule 54(b) Certification

Rule 54(b) is permissive in nature and affords the district court "the power to enter a final

judgment as to less than all of the claims or parties to an action if it decides that the ends of justice

so require." *International Schools Servs., Inc. v. AAUG Ins. Co., Ltd.,* 2012 WL 5635590 at *12

(quoting Charles A. Wright and Arthur R. Miller, Federal Practice and Procedures Section 2656 (3d

ed. 2007)). The rule has two requirements. First, there must be a final judgment disposing of at least

one party or claim. Second, there must be a "no just reason for delay" determination by the district

court. *International Schools Servs., Inc., supra* at *12. In the event that this Court dismisses the

actual agency claim pursuant to *Barbetta* and *Farrell*, yet does not dismiss the other counts against

RCCL, the Plaintiff respectfully requests that this Court grant Rule 54(b) certification. A final order

of dismissal of Count I would satisfy Rule 54(b)'s requirements as it would constitute a final

judgment disposing of at least one claim, and there would be no just reason for delay of the appeal.

The finding of no just reason for delay is within the discretion of the Court.  *Id*.  Here, the claims are entirely separable, in that actual agency liability is premised upon control, whereas apparent agency liability is based upon the actions of the principal (RCCL) by holding out the apparent agents (the medical staff) as its apparent agents.   Under an apparent agency analysis there is no need to demonstrate actual control.  Thus, the underpinnings of the two theories of liability, notwithstanding the presence of the word "agency" in both theories of liability, are separate and distinct. Accordingly, in the event that this Court dismisses Count I with prejudice, the Plaintiff respectfully requests that this Court enter final judgment thereon and certify such a final judgment for immediate appeal pursuant to Fed. R. Civ. P.  54(b).

### Apparent Agency

The Third District Court of Appeal's *Carlisle* decision was quashed by the Florida Supreme Court.  The Florida Supreme Court noted that the Third District's opinion "has some appeal because much has changed in the world in the one hundred years since the earlier courts held shipowners immune from such claims."  953 So.2d at 470.  Nevertheless, the court clung to the ancient fictions in an unwarranted and unwise nod to maritime uniformity.  *Id*. at 470.

The Florida Supreme Court's decision in *Carnival Corp. v. Carlisle*, 953 So. 2d 461 (Fla. 2007), specifically applies only to cases which attempt to hold a cruiseline liable under a theory of *respondeat superior*.  Nothing in *Carlisle* expressly or even impliedly holds that a passenger injured by the medical negligence of a shipboard physician is precluded from bringing a claim against the cruiseline based on any other theory, including that of apparent agency or agency by estoppel. Indeed, in *Carlisle*, the court noted the distinction between *respondeat superior* and apparent agency theories in footnote 8 of its opinion.  953 So. 2d 470 n.8.  The court expressly quashed the decision of the lower court and held only that "the shipowner is not vicariously liable under the theory of

*respondeat superior* for the medical negligence of the shipboard physician." *Id* at 470.

The better reasoned cases which have considered the issue under the theory of apparent agency, including post-*Carlisle*, have held that a passenger may indeed assert such a claim. *Lobegeiger, supra; Suter v. Carnival Corp.,* 2007 WL 4662144; *Huntley v. Carnival Corp.,* 307 F. Supp. 2d 1372 (S.D. Fla. 2007); *Doonan v. Carnival Corp.,* 404 F. Supp. 1367 (S.D. Fla. 2005); *Fairley v. Royal Cruise Line Ltd.,* 1993 A.M.C. 1633 (S.D. Fla. 1993); *Mack v. Royal Caribbean Cruises, Ltd.,* 838 N.E. 2d 80, *rev. denied* 850 N.E. 2d 808 (Ill. 2005), *cert. denied*, 127 S. Ct. 350 (2006).

In *Fairley* Judge Marcus held that, facts permitting, a cruise passenger could assert liability against the cruise line under a theory of apparent agency or agency by estoppel:

> Now such a proof of apparent agency would permit recovery on the theory that even where the ship doctor is an independent contractor (and consequently, the majority rule would not permit vicarious liability), if the ship actually held the doctor out to be its agent, under circumstances suggesting that the doctor was treating the plaintiff on behalf of the carrier, and the plaintiff so relied to her detriment, then the defendant could be liable for the ship doctor's malpractice.

*Id.* at 1640.

In response to the argument that the notation in the ticket contract that the physician was an independent contractor should prevail, Judge Marcus noted that 46 U.S.C. App. 183 c (now 46 U.S.C. 30509) prohibits owners of vessels transporting passengers from disclaiming liability "in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants." *Id.* at 1641 n.7. *See also Johnson v. Royal Caribbean Cruises, Ltd.,* 449 Fed.Appx. 846 (11th Cir. 2011); *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1555 (S.D. Fla. 2009) (*citing Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1335 (11th Cir. 1984)).

To state a cause of action for apparent agency, the Plaintiff must assert (1) that the alleged

principal made some sort of manifestation causing a third party (the Plaintiff) to believe that the

alleged agent had authority to act for the benefit of the principal; (2) that the third party's belief was

reasonable; and (3) that the third party reasonably acted on such belief to his detriment.  *Fojtasek v.*

*NCL (Bahamas) Ltd,* 613 F. Supp. 2d 1351, 1357 (S.D. Fla 2009)  (citing *Doonan v. Carnival Corp.,*

404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005)).  The Plaintiff has alleged the following with respect

to apparent agency, at Paragraph 26-40 of the Complaint:

26. That at all times material, the Defendant, RCCL, held out is medical staff, including

 its doctors and nurses, as being its employees who work in the Defendant's "medical

 centers" on the vessel.  That the Defendant RCCL, promotes its medical staff and

 represents them as being their employees through brochures, internet advertising, and

 on the vessel.  That RCCL held out its staff, including RACQUEL Y. GARCIA, R.N.

 and ROGELIO GONZALES, M.D., as being direct employees or its actual agents.

27. That the Defendant, RCCL, promotes the idea that the medical staff who work in its

 "medical centers" are employed by the cruise line as part of a marketing tool to induce

 passengers such as the Plaintiff to buy cruises on its ships, particularly because the

 cruise line goes to various foreign ports which may not have adequate medical care.

28. That RCCL manifested to the Plaintiff in this case that its medical staff, including

 RACQUEL Y. GARCIA, R.N. and ROGELIO GONZALES, M.D., were acting as it

 employees and/or actual agents in various ways, including but not limited to the

 following:

(a) the doctor and nurse both worked at what the Defendant describes in its

 advertising as its "medical centers";

(b) that the "medical centers" are owned and operated by RCCL, which pays to

stock the "medical centers" with all supplies, various medicines and

equipment; (c) that the passenger is billed directly by RCCL through the

passengers' Sign and Sail Card, whereas the "medical staff", including the

doctor and nurse, are paid salaries by RCCL to work in the "medical centers".

29.     That the medical staff in this case, including RACQUEL Y. GARCIA, R.N. and

ROGELIO GONZALES, M.D., were given uniforms to wear which include name

tags, and which have the RCCL name and logo.  Said uniforms were required by

RCCL to be worn by the doctor and nurse.

30.     That the doctor is considered to be an Officer on board the vessel and a member of the

crew, and was introduced to the passengers as one of the ship's Officers.

31.     That both the ship's doctor and the nurse were held out to the passengers by RCCL as

being members of the ship's crew.

32.     That the Defendant put the ship's physician and nurse under the command of the ship's

superior officers, including the Master of the ship.

33.     That the cruise line represents to immigration authorities that the physician and nurse

are members of the ship's crew.

34.     That both the ship's doctor and nurse are permitted to eat with the ship's crew.

35.     That the ship's physician and nurse provide services in the ship's "medical centers"

and the Plaintiff was required to go to the ship's medical center to be seen for his

injuries.

36.     That at the time of Plaintiff's injury, the Plaintiff was seen and briefly examined by the

ship's nurse and/or physician.

37.     That based on the foregoing, the Plaintiff believed, and was reasonable in his belief,

that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

38.     That the Plaintiff relied to his detriment on his belief that the physician and nurse were direct employees or actual agents of the Defendant in that the Plaintiff followed the advice of the nurse and/or physician who did not seek any further medical testing or evaluation while the ship was in Bermuda, that he relied on the ship's nurse and/or physician, that he did not follow-up with the ship's medical staff as he was told that he did not have any serious injury.

39.     That as a result of the Plaintiff's reliance upon the ship's medical staff, the Plaintiff's status was not properly diagnosed and his condition deteriorated to the point that he passed away.

40.     That the Defendants are liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

[DE 1 ¶¶26-40].

RCCL's argument that Plaintiff's Decedent's reliance on any "holding out" by RCCL of the physician as an agent was "unreasonable" because the passenger ticket "disclosed" that the physician was an independent contractor and not RCCL's agent, is likewise unavailing.  Here, as in *Suter*, there is no evidence that the Plaintiff's Decedent read and understood the terms and conditions included in his ticket.  Accordingly, this argument fails at the dismissal stage.  Compare *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329 (S.D. Fla. 2011) (on motion to dismiss) with *Lobegeiger v. Celebrity Cruises, Inc.*, 869 F.Supp.2d 1356 (S.D. Fla. 2012) (summary judgment order).

But even at the summary judgment stage, it would be unrealistic (to put it mildly) to think that

the average cruise passenger's belief that a shipboard doctor was the cruise lines' agent is unreasonable as a matter of law. Both Judge Cooke in *Wajnstat* and Judge Ryskamp, in *Warren v. Ajax Navigation Corp*., held that a cruise passenger's belief that the cruise line was holding out a physician as its apparent agent was not reasonable, as a matter of law, in light of the *Barbetta* line of cases. In a footnote, Judge Ryskamp posted that "while the proposition that ignorance of the law is no defense is most commonly seen in criminal law, it applies in the present case as well." *Id*. at n.3. Judge Cooke adopted this reasoning in *Wajnstat*.

Neither judge cited to any legal authority whatsoever for the proposition that one's reliance for the purposes of apparent agency doctrine is not reasonable as a matter of law given that the (previously unsettled) law is that the physician is not an actual agent. If cruise passengers were on notice of *Barbetta*, were they not also on notice that the *Nietes* decision was issued in 1959; *Fairley* in 1983; and the Third District *Carlisle* decision in 1984? It is bad enough that courts admittedly engage in the legal fiction that these shipboard physicians are not the ***actual agents*** of the cruise lines, without indulging in the even more fictional notion that the very reasonable belief (assiduously cultivated by the cruise line itself) that the physicians are apparent agents of the cruise ship is unreasonable, as a matter of law.

By the same token, RCCL's self-serving description of its physicians as "independent contractors" does not and cannot carry the day as a matter of law. Parties often include conclusory statements in contracts and other documents with regard to the independence of the relationship of the parties, even where the circumstances reflect otherwise. *See, e.g., Villazon v. Prudential Healthcare Plan, Inc.*, 843 So. 2d 842, 853-54 (Fla. 2003). *Cantor v. Cochran*, 184 So. 2d 173, 174 (Fla. 1966) ("While the obvious purpose to be accomplished by this document was to evince an independent contractor status, such status depends not on the statements of the parties but upon all

of the circumstances of their dealings with each other."). *See also Archer v. Trans American Services, Ltd.,* 834 F.2d 1570, 1573 (11th Cir. 1988) (effort by cruise line to sidestep legal duties to crew by calling them independent contractors rejected). Indeed, following the *Wajnstat* and *Warren* logic, because it is the law that merely ***saying*** that one is an independent contractor does not make it so, then the cruise line's reliance on their own ticket is unreasonable as a matter of law!

In order to demonstrate reliance upon the manifestation of agency, all that is necessary is that the complaint allege a change of position, which may include any "payment of money, expenditure of labor, suffering a loss or subjection to legal liability." *Suter, Id* at *7. The Plaintiff's Decedent paid for his reliance with his life. There is no requirement that the Plaintiff allege that he would have acted differently if he were informed that the ship's medical staff were independent contractors. He must merely allege that he relied upon the ship's holding out of the medical staff as its own and that he suffered damages as a result. Clearly, we have sufficiently alleged that the Plaintiffs followed (*ie*: relied upon) the ship's medical staff's advice to return to their cabin rather than seek further medical attention immediately.

<u>Count III of the Complaint Adequately States a Cause of Action<br>for Negligent Hiring or Retention</u>

If, as is the case here, a carrier undertakes to employ a doctor aboard ship for its passengers, the carrier has a duty to employ a doctor who is competent and duly qualified. *Barbetta*, 848 F.2d at 1369; *Farrell v. Royal Caribbean Cruises, Ltd.*, 2013 WL 178242 at *3 (S.D. Fla 2013). If the carrier breaches its duty, it is responsible for its own negligence. *Barbetta*, 848 F.2d at 1369.

In their Complaint, the Plaintiff herein has adequately alleged breach of this duty:

45.     That the Defendant, RCCL, breached its duty of care with regard to hiring and/or retention of the ship's doctor and nurse in one or more of the following manner:

(a)     that the Defendant negligently failed to conduct an appropriate investigation into the backgrounds of the doctor and nurse to determine if they were qualified to practice emergency medicine and to handle examinations and evaluations of severe head injuries;

(b)     that the Defendant negligently failed to hire medical personnel, including the doctor and nurse, that had appropriate training and/or experience in emergency medicine, including evaluation of severe head injuries;

(c)     that the Defendant negligently failed to hire medical personnel which were qualified and/or sufficiently trained and experienced in the use of diagnostic equipment that was aboard the vessel, which could have been used for diagnostic testing and evaluation of Plaintiff's injuries;

46.     That as a direct and proximate result of the negligence of the Defendant, the Plaintiff did not receive competent medical care, as a result of which his condition deteriorated and he passed away.

[DE 1 ¶¶45,46].

Whether a physician has been negligently hired is an issue of fact. *Lobegeiger v. Celebrity Cruises, Inc.*, 869 F.Supp.2d 1356, 1365 (S.D. Fla. 2012). Accordingly, as in *Lobegeiger*, this is a matter which is better dealt with at the summary judgment stage or at trial. *See, e.g., Chaparro v. Carnival Corp.,* 693 F.3d 1333 (11th Cir. 2012).

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully request that this Honorable Court enter an Order denying RCCL's Motion to Dismiss. **Alternatively**, in the event this Honorable Court grants RCCL's Motion to Dismiss, or any part thereof, Plaintiff respectfully moves this Court for leave to file an

Amended Complaint.

DATED:     February 21, 2013          Respectfully submitted,
          Miami, Florida

                                 PHILIP D. PARRISH, P.A.
                                 By: */s/ Philip D. Parrish*
                                 Philip D. Parrish (FBN) 541877
                                 phil@parrishappeals.com
                                 7301 SW 57th Court, Suite 430
                                 Miami, Fl 33143
                                 Tel:    305-670-5550
                                 Fax:    305-670-5552

                                 Joel M. Barnett, Esq.
                                 waksbar@aol.com
                                 WAKS & BARNETT, P.A.
                                 9900 SW 107 Avenue, Suite 101
                                 Miami, Florida 33176
                                 Tel:    305-670-5550
                                 Fax:    305-670-5552
                                 *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                 */s/ Philip D. Parrish*
                                 Philip D. Parrish (541877)

## SERVICE LIST

CASE NO: 13-cv-20090-LEONARD/O'Sullivan

Joel M. Barnett, Esq.
waksbar@aol.com
WAKS & BARNETT, P.A.
9900 SW 107 Avenue, Suite 101
Miami, Florida 33176
Tel:    305-670-5550
Fax:    305-670-5552
*Counsel for Plaintiff*

Philip D. Parrish, Esq.
phil@parrishappeals.com
PHILIP D. PARRISH, P.A.
7301 SW 57th Court, Suite 430
Miami, Fl 33143
Tel:    305-670-5550
Fax:    305-670-5552
*Counsel  for Plaintiff*

Darren W. Friedman, Esq.
dfriedman@fflegal.com
Elisha Sullivan, Esq.
esullivan@fflegal.com
FOREMAN FRIEDMAN, P.A.
One Biscayne Tower - Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Tel:    305-358-6555
Fax:    305-374-9077
*Counsel for Defendant*