UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20090-CIV-LENARD/O'SULLIVAN

**PATRICIA FRANZA, as personal
representative of the estate of
PASQUALE F. VAGLIO,**

　　　　　　　　　Plaintiff,

v.

**ROYAL CARIBBEAN CRUISES,
LTD.**,
　　　　　　　　　Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (D.E. 7)

**THIS CAUSE** is before the Court on Defendant Royal Caribbean Cruises, Ltd.'s Motion to Dismiss Plaintiff's Complaint and to Strike Plaintiff's Demand for Trial by Jury ("Motion," D.E. 7), filed on February 4, 2013. On February 21, 2013, Plaintiff filed a response ("Response," D.E. 13), and on March 7, 2013, Plaintiff filed a supplemental memorandum of law regarding the right to a jury trial ("Supplemental Response," D.E. 17). Defendant filed its reply in support of its motion to dismiss ("Reply," D.E. 23) on March 28, 2013, and Defendant filed its reply in support of its motion to strike Plaintiff's jury trial demand ("Supplemental Reply," D.E. 20) on March 18, 2013. Upon review of the Complaint (D.E. 1), Motion, Response, Supplemental Response, Reply, Supplemental Reply, and the record, the Court finds as follows.

I.      Background[1]

Plaintiff Patricia Franza, as personal representative of the estate of Pasquale F. Vaglio, claims that Vaglio passed away as a result of the alleged negligence of shipboard medical personnel. On July 23, 2011, Vaglio was a passenger on the *Explorer of the Seas*, which is a cruise ship that is owned and/or operated by Defendant Royal Caribbean Cruises, Ltd. ("Royal Caribbean" or "RCL"). (Compl. ¶¶ 8-9.) While the ship was docked in Bermuda, Vaglio fell while attempting to get onto a trolley at or near the dock, suffering a severe blow to the head. (Id. ¶¶ 9-10.) After the fall, Vaglio was taken in a wheelchair to the ship's infirmary, where he was evaluated by Nurse Racquel Y. Garcia. (Id. ¶¶ 6, 11.) Garcia told Vaglio that "he was fine to return to his cabin, that he might have a concussion, and that [his wife] should continue to observe him." (Id. ¶ 11.) Vaglio and his wife returned to their cabin. (Id. ¶ 12.) Approximately an hour and a half later, Vaglio's son and daughter-in-law returned to the cabin, noticed that Vaglio's condition was deteriorating, and called for emergency help. (Id. ¶ 13.) Twenty minutes later, Vaglio was transported by wheelchair to the infirmary, and once he arrived at the infirmary, there was an additional delay before he was seen by the ship's physician, Dr. Rogelio Gonzales. (Id. ¶¶ 7, 13-14.) Dr. Gonzales started a Mannitol drip and ordered that Vaglio be transferred to a hospital for further care and treatment. (Id. ¶ 15.) The next day, Vaglio was airlifted to another hospital, where he remained in intensive care until he passed away on August 1, 2011. (Id. ¶ 17.)

---

[1]     The following facts are gleaned from Plaintiff's Complaint and are deemed to be true for purposes of Defendant's Motion.

Plaintiff, in her capacity as personal representative of Vaglio's estate, has asserted claims against Royal Caribbean for negligent medical care and treatment (Count I), negligence of Royal Caribbean based upon apparent agency (Count II), and negligent hiring, retention, and training by Royal Caribbean (Count III). (See id. ¶¶ 19-46.)

Royal Caribbean moves to dismiss Count I of the Complaint with prejudice, arguing that a ship owner cannot be held liable for the alleged negligence of the ship's medical personnel. (Motion 2-3.) Royal Caribbean moves to dismiss Count II with prejudice, arguing that a ship owner cannot be held vicariously liable for the alleged negligence of its shipboard medical personnel by pleading apparent agency. (Id. at 4-5.) Royal Caribbean argues that Count III should be dismissed for failure to state a claim because "Plaintiff has failed to allege that RCL knew or should have known of any facts that would have put it on notice that the subject medical personnel were unfit to perform their employment duties either prior to hiring them, or during the period of their employment." (Id. at 9-11.) Royal Caribbean also moves to limit Plaintiff's damages to those allowed under the Death on the High Seas Act and to strike Plaintiff's jury trial demand. (See id. at 11-15.)

In the Response, Plaintiff acknowledges that the majority of courts have found that a ship owner cannot be held liable for the alleged negligence of the ship's medical personnel, but argues that the Court should adopt a different rule. (See Response 3-12.) Plaintiff requests that if the Court dismisses Count I with prejudice, that the Court enter final judgment thereon and certify such final judgment for immediate appeal. (Id. at 12.) With regard to Count II, Plaintiff argues that some courts have found that a passenger may assert

3

a claim of negligence against a shipowner based on apparent agency and that Plaintiff has alleged sufficient facts supporting the claim. (See id. at 12-18.) Finally, Plaintiff argues that the Complaint sets forth sufficient facts to support a claim for negligent hiring or retention. (See id. at 18-20.)

**II.     Legal Standards**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), courts adopt a "two-pronged approach" whereby they first (1) eliminate any allegations in the complaint that are merely legal conclusions and then (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)).

**III.    Discussion**

Where an alleged tort occurs aboard a ship sailing upon navigable waters, federal maritime law governs the resulting substantive claims. Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1564 n.10 (11th Cir. 1991). The same holds true when the alleged tort occurs at a scheduled port-of-call. See Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 901-02 (11th Cir. 2004).

Under general maritime law, a cruise ship owner owes a duty to its passengers to exercise "reasonable care under the circumstances." See Kemarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959).

4

### A.     Negligent Medical Care and Treatment

In Count I, Plaintiff seeks to hold Royal Caribbean liable for the alleged negligent care and treatment of Vaglio by the ship's medical staff.[2] (See Compl. ¶¶ 19-25.) A carrier owes its sick and injured passengers a duty to exercise "reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances," but it owes no duty to maintain a doctor on board for the benefit and convenience of its passengers. Barbetta v. S/S Bermuda Star, 848 F.2d 1364, 1369, 1371 (5th Cir. 1988). A carrier accordingly owes no duty to train shipboard medical staff. See Wajnstat v. Oceania Cruises, Inc., No. 09-21850, 2011 WL 465340, at *3 (S.D. Fla. Feb. 4, 2011). Nor does it owe a duty to provide medical transportation, Gliniecki v. Carnival Corp., 632 F. Supp. 2d 1205, 1207-08 (S.D. Fla. 2009), or to provide medical equipment such as wheelchairs, Walsh v. NCL (Bahamas) Ltd., 466 F. Supp. 2d 1271, 1273 (S.D. Fla. 2006). Furthermore, a carrier is not required to promulgate or enforce particular medical directives regarding patient care, and it is thus not negligent if it fails to do so. Hajtman v. NCL (Bahamas) Ltd., 526 F. Supp. 2d 1324, 1327 (S.D. Fla. 2007).

---

[2]     Specifically, Plaintiff alleges that Royal Caribbean "by and through the acts of its employees or agents, was negligent, in one or more of the following ways: (a) in failing to properly assess the condition of PASQUALE VAGLIO; (b) in allowing a nurse to make the initial assessment; (c) in failing to have a doctor assess the patient; (d) in failing to timely diagnose and appropriately treat the patient; (e) in failing to order appropriate diagnostic scans to further assess the degree of injury; (f) in failing to obtain consultations with appropriate specialists; (g) in failing to properly monitor the patient; (h) in failing to evacuate the patient from the vessel for further care in a timely manner; (i) in deviating from the standard of care for patients in Mr. Vaglio's circumstances who had suffered a significant blow to the head." (Compl. ¶ 20.)

Here, Plaintiff's allegations that Defendant failed to properly assess, diagnose, treat, monitor, and transport Vaglio are all predicated on duties of care which are not recognized under maritime law. The Court therefore finds that these allegations cannot sustain a negligence claim against Royal Caribbean. Accordingly, the Court dismisses Count I of the Complaint with prejudice.[3]

---

[3] Plaintiff requests that this Court enter final judgment on Count I and certify such final judgment for immediate appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. "District courts follow a two-step analysis in determining whether an order may properly be certified under Rule 54(b)." United States ex rel. Armfield v. Gills, No. 8:07-CV-2374-T-27TBM, 2011 WL 2084072, *2 (M.D. Fla. May 24, 2011). "First, the court determines whether the order proposed to be certified is in fact a final judgment in that it constitutes the ultimate disposition of a separable claim for relief." Id. (citing Lloyd Noland Found., Inc. v. Tenet Health Care Corp., 483 F.3d 773, 777 (11th Cir. 2007)). "Second, the district court determines whether there is no 'just reason for delay' in certifying the order as final and immediately appealable." Id. (quoting Lloyd Noland, 483 F.3d at 777). "This determination requires the district court to balance (1) judicial administrative interests and (2) relevant equitable concerns." Id. (citing Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 165 (11th Cir. 1997)). "'Consideration of the former factor is necessary to ensure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals.'" Id. (quoting Ebrahimi, 114 F.3d at 166). "'The latter factor serves to limit Rule 54(b) certification to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay.'" Id. (quoting Ebrahimi, 114 F.3d at 166). "As these factors will often suggest contrary conclusions, Rule 54(b) certifications must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.'" Id. at *3 (quoting Ebrahimi, 114 F.3d at 166). "Because 'such circumstances will be encountered only rarely,' the Eleventh Circuit has counseled district courts to exercise their limited discretion under Rule 54(b) conservatively." Id. (quoting Ebrahimi, 114 F.3d at 166).

The Court does not find that the circumstances of this case justify certification of a final judgment on Count I for immediate appeal. As to the first factor, while the Complaint asserts negligence claims as three separate counts, ultimately, they all seek the same relief, which is to hold the Royal Caribbean responsible for the alleged negligence of the ship's medical staff. Accordingly, the Court finds that the three counts are not really separate claims for relief such that immediate appeal of one, while the other remains pending in the trial court, would be justified under Rule 54(b). As to the second factor, the Court finds that Plaintiff will not suffer any hardship or injustice in waiting for final disposition of the claim, as Plaintiff is seeking the

### B. Negligence of Royal Caribbean Based Upon Apparent Agency

In Count II of the Complaint, Plaintiff seeks to hold Royal Caribbean liable for negligence of its medical staff based on a theory of apparent agency. (Compl. ¶¶ 26-40.) The prevailing conclusion in this District and the majority of other jurisdictions is that a cruise line cannot be held vicariously liable for the negligence of its ship's doctor in the care and treatment of passengers. Huang v. Carnival Corp., --- F. Supp. 2d ---, 2012 WL 6621173, at *3 (S.D. Fla. Dec. 11, 2012) (citing Barbetta, 848 F.2d at 1372); see also Peterson v. Celebrity Cruises, Inc., 753 F. Supp. 2d 1245, 1247 (S.D. Fla. 2010); Ridley v. NCL (Bahamas) Ltd., 824 F. Supp. 2d 1355, 1362 (S.D. Fla. 2010); Hesterly v. Royal Caribbean Cruises, Ltd., 515 F. Supp. 2d 1278, 1284 (S.D. Fla. 2007); Doonan v. Carnival Corp., 404 F. Supp. 2d 1367, 1370-71 (S.D. Fla. 2005); Mascolo v. Costa Crociere, S.p.A., 726 F. Supp. 1285, 1286 (S.D. Fla. 1989). The justifications for this rule are the cruise line's lack of control over the doctor-patient relationship and the cruise line's failure to possess expertise in supervising the doctor in his practice of medicine. Doonan, 404 F. Supp. 2d at 1370 (citing Barbetta, 848 F.2d at 1369-70). While the prevailing conclusion is that a carrier cannot be held vicariously liable for the negligence of its medical staff based on respondeat superior/actual agency, some courts in this District have nonetheless concluded that a carrier may be held vicariously liable on a theory of "apparent" agency. See, e.g., Peterson v.

---

same damages, and is seeking to hold the same Defendant liable under each of the alleged theories of liability. This is not the "unusual case" contemplated by the Eleventh Circuit for interlocutory appeal under Rule 54(b). Accordingly, Plaintiff's request for immediate certification under Rule 54(b) is denied.

7

Celebrity Cruises, Inc., 753 F. Supp. 2d 1245, 1248 (S.D. Fla. 2010); Hajtman v. NCL (Bahamas) Ltd., 526 F. Supp. 2d 1324, 1328 (S.D. Fla. 2007). Apparent agency is established when (1) an alleged principal makes some sort of manifestation causing a third party to believe that an alleged agent had authority to act for the benefit of the principal; (2) such belief was reasonable; and (3) the claimant reasonably acted on such belief to his detriment. Doonan, 404 F. Supp. 2d at 1371.

The Court finds that Plaintiff has failed to raise sufficient allegations to sustain an apparent agency claim. Even assuming that the Complaint establishes the first and second elements of apparent agency – i.e., that Royal Caribbean made certain manifestations leading Vaglio to reasonably believe that the medical staff were Royal Caribbean's agents – Plaintiff raises no allegations indicating how Vaglio acted or relied on that purported belief. The Complaint avers only that "Plaintiff relied to his detriment on his belief that the physician and nurse were direct employees or actual agents of the Defendant in that the Plaintiff followed the advice of the nurse and/or physician who did not seek any further medical testing or evaluation while the ship was in Bermuda, that he relied on the ship's nurse and/or physician, [and] that he did not follow-up with the ship's medical staff as he was told that he did not have any serious injury." (Compl. ¶ 38.) Plaintiff fails to allege how Vaglio relied upon the alleged apparent agency because the Complaint does not state how Vaglio relied on, or changed his position in reliance on, his alleged belief that the doctor and/or nurse was Royal Caribbean's agent. See, e.g., Gavigan v. Celebrity Cruises, Inc., 843 F. Supp. 2d 1254,

1262-63 (S.D. Fla. 2011) ("While Plaintiff alleged that Gavigan 'relied upon [Celebrity's] representations' that the doctors were Celebrity's agents, the Amended Complaint fails to contain the necessary factual allegations describing his reliance on the <u>agency</u> relationship to his detriment.  Moreover, simply repeating the term 'reliance' or the phrase 'relied upon' throughout the pleadings fails to satisfy the burden here.  Facts, rather than conclusory allegations are necessary to avoid dismissal of this claim." (citations omitted)); <u>see also</u> <u>Rinker v. Carnival Corp.</u>, 836 F. Supp. 2d 1309, 1319 (S.D. Fla. 2011) ("Plaintiff's husband does not state that, had he known the doctor and nurses were independent contractors, he would not have sought their medical help for his wife.  Thus, it is not clear how he relied."); <u>Warren v. Ajax Navigation Corp.</u>, No. 91-0230-CIV, 1995 WL 688421, at *3-4 (S.D. Fla. Feb. 3, 1995) ("Plaintiff must . . . show . . . that he relied or changed his position in reliance on his alleged belief that Dr. Nodarse was defendants' agent. . . .  Plaintiff has not provided evidence sufficient to show that he selected the cruise in reliance that Dr. Nodarse was an agent authorized to act on behalf of the shipowners.").  Accordingly, the Court finds that Plaintiff's allegations are insufficient to state a claim, and Count II is dismissed without prejudice.

### C.   Negligent Hiring, Retention, and Training by Royal Caribbean

In Count III of the Complaint, Plaintiff alleges that Royal Caribbean negligently hired, retained, and trained its medical staff. (Compl. ¶¶ 41-46.)  If a carrier undertakes to employ a doctor aboard ship for its passengers' convenience, the carrier has a duty to employ a

doctor who is competent and duly qualified.  Barbetta, 848 F.2d at 1369.  If the carrier breaches its duty, it is responsible for its own negligence.  Id.  However, "[t]he fact that the physician errs in his treatment does not prove that he was incompetent or that the company was negligent in appointing him."  Jackson v. Carnival Cruise Lines, Inc., 203 F. Supp. 2d 1367, 1375 (S.D. Fla. 2002) (quoting Di Bonaventure v. Home Lines, Inc., 536 F. Supp. 100, 103 (E.D. Pa. 1982)).

   Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness.  Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1318 (M.D. Fla.2002) (citing Garcia v. Duffy, 492 So.2d 435, 438 (Fla. Dist. Ct. App. 1986)).  The issue of liability focuses primarily upon the adequacy of the employer's pre-employment investigation into the employee's background.  Id.  To state a cause of action for the tort of negligent hiring or retention, a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee. Id. (citing Willis v. Dade Cnty. Sch. Bd., 411 So. 2d 245, 246 (Fla. Dist. Ct. App. 1982)). The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness.   Id. (citing Garcia, 492 So. 2d at 438).   "Liability for negligent . . . retention . . . occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment."  Malicki v. Doe, 814 So. 2d 347, 362 n.15 (Fla. 2002).

10

Here, the Court finds that Plaintiff's allegations are insufficient to state a claim that Royal Caribbean negligently hired or retained any medical staff. With regard to hiring, the Complaint alleges that Royal Caribbean: (1) "negligently failed to conduct an appropriate investigation into the backgrounds of the doctor and nurse to determine if they were qualified to practice emergency medicine and to handle examinations of severe head injuries;" (2) "negligently failed to hire medical personnel, including the doctor and nurse, that had appropriate training and/or experience in emergency medicine, including evaluation of severe head injuries;" and (3) "negligently failed to hire medical personnel which were qualified and/or sufficiently trained and experienced in the use of diagnostic equipment that was aboard the vessel." (Compl. ¶ 45.) With regard to retention, the Complaint avers only that Royal Caribbean "negligently retained the doctor and nurse without providing appropriate training and procedures for triage and referral to shore side facilities or physician." (Id.) Plaintiff does not allege any facts showing that Royal Caribbean was put on notice of any harmful propensities or unfitness for employment of anyone on its medical staff. See Stires, 243 F. Supp. 2d at 1318-19 (finding that the plaintiff properly alleged causes of action for negligent hiring and retention against a cruise line because the plaintiff alleged, inter alia, "that Carnival and its employees (the medical staff) were aware of [an employee's] propensities"). Furthermore, any alleged negligence by the medical staff in this incident involving Vaglio cannot sustain Plaintiff's claim, as it would not establish prior notice of unfitness to Royal Caribbean. See, e.g., Tello v. Royal Caribbean Cruises, Ltd., --- F. Supp.

11

2d ----, 2013 WL 1500573, *4-5 (S.D. Fla. Mar. 30, 2013); Smolnikar v. Royal Caribbean Cruises Ltd., 787 F. Supp. 2d 1308, 1322 (S.D. Fla. 2011). The Court thus finds that Plaintiff has pled insufficient factual matter to sustain a negligent hiring or a negligent retention claim. Accordingly, Plaintiff's claims of negligent hiring and retention as set forth in Count III of the Complaint are dismissed without prejudice.

Finally, Count III also asserts that Royal Caribbean "negligently failed to provide appropriate training and procedures to the doctor and nurse for use of the ship's equipment for diagnostic training." (Compl. ¶ 45.) A carrier owes no duty to maintain a doctor on board for the benefit and convenience of its passengers, Barbetta, 848 F.2d at 1371, and accordingly owes no duty to train shipboard medical staff, Wajnstat, 2011 WL 465340, at *3. Because Plaintiff's claim of negligent training is predicated on a duty of care which is not recognized under maritime law, the Court dismisses the claim of negligent training as set forth in Count III of the Complaint with prejudice.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that, as consistent with this Order:

1. Defendant's Motion to Dismiss the Complaint (D.E. 7), filed on February 4, 2013, is **GRANTED**;

2. Count I and the negligent training claim in Count III of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**;

3.  Count II and the negligent hiring and negligent retention claims of Count III of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE**; and

4.  Plaintiff has until and including June 13, 2013 to file an amended complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of May, 2013.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**